UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

B.L., by and through his Parent and Natural
Guardian, Carole Lundell,

      Plaintiff,

      v.

Mahtomedi School District, ISD No. 832,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 17-1193 ADM/SER

_____

Andrea L. Jepsen, Esq., School Law Center, LLC, St. Paul, MN, on behalf of Plaintiff.

Michael J. Waldspurger, Esq., and Elizabeth J. Vieira, Esq., Rupp, Anderson, Squires & Waldspurger, P.A., Minneapolis, MN, on behalf of Defendant.
_____

## I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Plaintiff B.L.'s Motion for a Temporary Restraining Order, or in the Alternative, a Preliminary Injunction [Docket No. 8]. B.L. is a high school student who was expelled from the Mahtomedi School District (the "District") for possessing and displaying an air-powered BB-gun on school grounds on March 20, 2107. Larson Decl. [Docket No. 13] ¶ 3; Ex. D. On April 17, 2017, while the expulsion proceeding was in progress, B.L. sued the District and sought emergency injunctive relief to terminate the District's expulsion process. See Am. Compl. [Docket No. 6]. B.L. argues that the District failed to follow the Pupil Fair Dismissal Act, Minn. Stat. § 121A.40, et seq., because he was not provided with the required alternative educational services. B.L. seeks an order enjoining the District from continuing to attempt to expel B.L. and from continuing to exclude B.L. from attending school. For the reasons set forth below, B.L.'s Motion is denied.

## II. BACKGROUND[1]

On March 20, 2017, B.L. was suspended for 10 days for possessing and brandishing a BB-gun on school grounds. Larson Decl. Ex. B ("Hr'g Exs.") at Ex. 4. During this period of suspension, B.L. had access to his school work and many of his teachers met with him to discuss his coursework. Larson Decl. Ex. A ("Hr'g Tr.") at 97. Additionally, the District assigned B.L. an intervention specialist to assist him in completing his academics and to help him make better choices. Id. at 73.

On March 27, 2017, the District informed B.L. that he was being suspended for five additional days pending expulsion. Hr'g Exs. at Ex. 6. The following day, B.L. received a Notice of Proposed Expulsion, formally notifying B.L. that the District proposed expelling B.L. pursuant to the Pupil Fair Dismissal Act ("PFDA"), and that a hearing on the matter was scheduled for Monday, April 3, 2017. Id. at Ex. 7. The hearing date was later moved to April 12 to accommodate the schedule of B.L.'s attorney. Larson Decl. Ex. F.

The expulsion hearing was held before Hearing Officer Richard John Miller ("Miller"). Miller heard testimony from B.L., the school bus driver who observed B.L. brandishing the BB-gun, a school resource officer and Washington County deputy sheriff who spoke with B.L. about the incident, the Mahtomedi High School principal and assistant principal, and the District superintendent. See generally Hr'g Tr. On April 17, 2017, Miller submitted his

---

[1] The parties both provide a thorough and fairly consistent background of the events leading up to B.L.'s suspension and expulsion, including how and why B.L. came into possession of the BB-gun on school property. Since resolving this Motion principally turns on the District's actions once it decided to suspend B.L., a detailed recitation of the facts leading up to the suspension is omitted.

recommendation to the School Board.[2]  Larson Decl. ¶ 7.  The School Board then met the following day to consider Miller's recommendation.  Id. ¶ 8.  After deliberating for approximately 90 minutes, the School Board adopted a resolution expelling B.L. from the District for the remainder of the 2016–17 school year and for the first semester of the 2017–18 school year.  Id. ¶ 9; Ex. D.

B.L. filed this suit on April 17, 2017, seeking a temporary restraining order or a preliminary injunction to enjoin the District's expulsion proceeding.  The gravamen of B.L.'s Amended Complaint [Docket No. 6] is that his property right to education was impaired by the District's failure to provide the proper alternative educational services prior to initiating the expulsion proceeding.

### III.  DISCUSSION

#### A.  Younger Abstention

The District argues that this federal court should decline to interfere with a state proceeding under the abstention doctrine announced in Younger v. Harris, 401 U.S. 37 (1971).  Under Younger, "[w]here vital state interests are involved, a federal court should abstain 'unless state law clearly bars the interposition of the constitutional claims.'"  Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (quoting Moore v. Sims, 442 U.S. 415, 426 (1979)).

The District presents a persuasive argument for why abstaining under Younger is appropriate, including that B.L. has and is able to continue to pursue his rights in the

---

[2] The parties agreed to waive the requirement under Minn. Stat. § 121A.47, subd. 12 that Miller's recommendation be made within two days of the hearing.

administrative forum, including seeking judicial review of the administrative outcome at the Minnesota Court of Appeals.

Younger abstention was raised by the District in its responsive memorandum, and B.L. has not been able to present any counter-argument why Younger does not apply. A definitive ruling on this issue is unnecessary here. Because B.L.'s Motion clearly has not met the requirements for injunctive relief and denial of the Motion is dispositive of the federal case[3], further elaboration on the propriety of abstaining under Younger is unnecessary.

**B. Preliminary Injunction**

A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing its propriety. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003). The court considers four factors in determining whether a preliminary injunction should issue: (1) the threat of irreparable harm to the movant in the absence of relief; (2) the balance between the harm alleged and the harm that the relief may cause the non-moving party; (3) the movant's likelihood of success on the merits; and (4) the public interest. Dataphase Sys., Inc. v. C.L. Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).[4] These factors do not carry equal weight, as "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." Bandag, Inc. v. Jack's Tire & Oil, Inc., 190 F.3d 924, 926 (8th Cir. 1999). Therefore, unless B.L. demonstrates that he will be irreparably harmed absent an injunction, injunctive relief is not warranted. See Gelco Corp. v. Coniston Partners, 811 F.2d

---

[3] The Amended Complaint filed with the Motion seeks only injunctive relief.

[4] The same legal standard applies to both a request for a temporary restraining order and a request for a preliminary injunction. See S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989).

4

414, 418 (8th Cir. 1987) (holding that irreparable harm is a threshold factor to obtaining a preliminary injunction).

B.L. argues that the District's expulsion proceeding has impinged on his constitutionally protected property right to education. As a result, B.L. contends that injunctive relief is required to prevent irreparable harm because without an injunction, access to his education will be interrupted, greatly increasing the likelihood of repeating a grade, failing to graduate from high school, and becoming involved in the criminal and juvenile justice systems.

Contrary to B.L.'s assertion, his access to education has not been critically interrupted. During the expulsion proceeding, the District granted B.L. access to his classwork and his teachers, and the District assigned him an intervention specialist to assist with his academics and to coach him on making better choices. Hr'g Tr. at 73–74. Importantly, B.L. does not claim that the District's efforts have been lacking, as both B.L. and his mother stated that they have been satisfied with the educational services the District has provided. Am. Compl. ¶ 62; Larson Decl. ¶ 11. Approving of the provided educational services critically undermines B.L.'s argument that the District's actions need to be enjoined because of the irreparable harm that will follow if his access to his education is eliminated. Furthermore, even though the School Board has already passed a resolution expelling B.L., the District has pledged to continue providing the same educational services until he is enrolled in another school district, alternative learning center, charter school, or on-line learning program. See Larson Decl. Ex. E. Finally, before initiating the expulsion proceeding, the District offered to allow B.L. to withdraw, effectively mooting the expulsion proceeding, and promised to assist B.L. enroll in another district by providing contacts and making appointments with other schools. Hr'g Tr. at 72.

The District's commitment to provide B.L. with continued educational services plainly decreases the likelihood of the specific irreparable harm B.L. asserts will occur absent an injunction. Since the threat of irreparable harm requires a presently existing actual threat of injury rather than a possibility of remote future injury, B.L. has not demonstrated irreparable harm will result without an injunction. See Rodgers v. Scurr, 676 F.2d 1211, 1214 (1982) ("The dramatic and drastic power of injunctive force may be unleashed only against conditions generating a presently existing actual threat; it may not be used simply to eliminate a possibility of a remote future injury. . . .").

Finally, although a detailed discussion on the merits is unnecessary given that the irreparable harm factor is not satisfied, the District presents a strong likelihood that they will succeed on the merits of the case. B.L.'s admitted possession of a BB-gun bearing striking similarity to a handgun[5], on school grounds, is strong evidence that B.L. created an immediate and substantial danger to himself and others, excepting the District's obligation to provide the specific alternative educational services. See Minn. Stat. § 121A.45, subd. 1.[6] Furthermore, the District's continued promise to provide B.L. with alternative educational services until he is enrolled elsewhere likely satisfies the plain language of the PFDA, and B.L.'s arguments to the contrary are unpersuasive at this stage of the litigation.

---

[5] Hearing Officer Miller heard testimony from Deputy Sheriff Officer Justin McDonough that the BB-gun in question "looked exactly like a handgun" and that if Officer McDonough had observed B.L. with the BB-gun, "even knowing B.L. and how we know each other, . . . I would have pulled my service weapon out." Hr'g Tr. at 60.

[6] Minn. Stat. § 121A.45, subd. 1 provides that "No school shall dismiss any pupil without attempting to provide alternative educational services before dismissal proceedings, except where it appears that the pupil will create an immediate and substantial danger to self or to surrounding persons or property."

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that B.L.'s Motion for a Temporary Restraining Order, or in the Alternative, a Preliminary Injunction [Docket No. 8] is **DENIED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 26, 2017.