# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

B.L., by and through his Parent and Natural
Guardian, Carole Lundell,

      Plaintiff,

    v.

Mahtomedi School District, ISD No. 832,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 17-1193 ADM/SER

_____

Andrea L. Jepsen, Esq., School Law Center, LLC, St. Paul, MN, on behalf of Plaintiff.

Michael J. Waldspurger, Esq., and Elizabeth J. Vieira, Esq., Rupp, Anderson, Squires &
Waldspurger, P.A., Minneapolis, MN, on behalf of Defendant.

_____

## I.  INTRODUCTION

On March 28, 2018, the undersigned United States District Judge heard oral argument on

Defendant Mahtomedi School District, ISD No. 832's (the "District") Motion for Summary

Judgment [Docket No. 29].  Plaintiff B.L., by and through his Parent and Natural Guardian,

Carole Lundell ("B.L."), opposes the Motion.  For the reasons set forth below, the District's

Motion is granted.

## II.  BACKGROUND

### A.  Factual Background

On March 20, 2017, B.L. was suspended for 10 days for possessing and brandishing a

BB-gun on school grounds.  Larson Decl. [Docket No. 13] Ex. B ("Hr'g Exs.") at Ex. 4.  During

this period of suspension, B.L. had access to his schoolwork and many of his teachers met with

him to discuss his coursework.  Larson Decl. Ex. A ("Hr'g Tr.") at 97.  Additionally, the District

assigned B.L. an intervention specialist to assist him in completing his assignments and to help him make better choices.  Id.  at 73.

On March 27, 2017, the District informed B.L. that he was being suspended for five additional days pending expulsion.  Hr'g Exs. at Ex. 6.  The following day, B.L. received a Notice of Proposed Expulsion, formally notifying B.L. that the District proposed expelling him pursuant to the Pupil Fair Dismissal Act ("PFDA"), Minn. Stat. §§ 131A.40–121A.56.

On April 12, 2017, an expulsion hearing was held before Hearing Officer Richard John Miller (the "Hearing Officer").  The Hearing Officer heard testimony from B.L., a school bus driver who observed B.L. brandishing the BB-gun, a school resource officer and Washington County deputy sheriff who spoke with B.L. about the incident, the Mahtomedi High School principal and assistant principal, and the District superintendent.  See generally Hr'g Tr.  After the hearing, the Hearing Officer submitted his recommendation to the School Board, which met the following day to consider the recommendation.  Larson Decl. ¶¶ 7, 8.  After deliberating for approximately 90 minutes, the School Board adopted a resolution expelling B.L. from the District for the remainder of the 2016–17 school year and for the first semester of the 2017–18 school year.  Id. ¶ 9; Ex. D.

B.L. appealed the School Board's expulsion decision to the Commissioner of the Minnesota Department of Education ("MDE").  Vieira Decl. [Docket No. 32] ¶ 3.  On June 30, 2017, the MDE upheld the expulsion decision, but decreased the length of the expulsion to the end of the 2016-17 school year and not to the first semester of the 2017-2018 school year.  Id.

B.L. and the District appealed the MDE decision to the Minnesota Court of Appeals.  Id. ¶ 4.  Pursuant to Minnesota law, the MDE's decision was stayed pending the outcome of the

appeal, meaning that the School Board's decision expelling B.L. through the 2016-17 school year and the first semester of the 2017-18 school year remained in effect.  See Minn. Stat. § 121A.50.  The first semester of the 2017-18 school year ended on January 18, 2018.  Id. ¶ 2. The Minnesota Court of Appeals heard oral argument on the parties' appeal of the MDE's ruling on February 22, 2018.  The appeal is pending.

**B.  Procedural Background**

On April 17, 2017, B.L. filed aAmended Complaint [Docket No. 6] alleging that his property right to education was impaired by the District's failure to provide the proper alternative educational services prior to initiating the expulsion proceeding.  B.L. also alleges that his due process rights were violated when the District's Superintendent communicated with members of the School Board prior to adopting the resolution expelling B.L. from the District.

On April 18, 2017, B.L. sought a temporary restraining order or a preliminary injunction to enjoin the District's expulsion proceeding.  See Mot. TRO, Mot. Prelim. Inj. [Docket No. 8]. On April 26, 2017, the Court denied B.L.'s Motion, holding that B.L. failed to sufficiently demonstrate irreparable harm and that the District was likely to succeed on the merits.  Mem. Op. Order [Docket No. 15]; B.L. v. Mahtomedi Sch. Dist., ISD No. 832, No. 17-1193, 2017 WL 1497855, at *3 (D. Minn. Apr. 26, 2017).

After the Motion was denied, no additional discovery was taken.  See Jepsen Aff. [Docket No. 28] at 2.  On January 24, 2018, the District filed its Motion for Summary Judgment.

## III.  DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment is appropriate if there are no genuine issues of material fact and the

moving party can demonstrate that it is entitled to judgment as a matter of law.  Fed. R. Civ. P.

56(a).  A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the

evidence is such that it could lead a reasonable jury to return a verdict for either party.  Anderson

v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A court considering a motion for summary

judgment must view the facts in the light most favorable to the nonmoving party and give that

party the benefit of all reasonable inferences to be drawn from those facts.  Matsushita Elec.

Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, the nonmoving

party "may not rest upon allegations, but must produce probative evidence sufficient to

demonstrate a genuine issue [of material fact] for trial."  Davenport v. Univ. of Ark. Bd. of Trs.,

553 F.3d 1110, 1113 (8th Cir. 2009) (citing Anderson, 477 U.S. at 247–49).

## B.  **Younger** Abstention

B.L. first argues that the existence of the state court proceeding requires this Court to

abstain from ruling on the District's Motion for Summary Judgment pursuant to Younger v.

Harris, 401 U.S. 37 (1971).  Absent unusual circumstances, Younger and its progeny directs a

federal court to abstain from exercising jurisdiction so as to not interfere with a pending state

court proceeding.  Id. at 44–45.  In practice, Younger functions to prevent a state court defendant

from enjoining the state court proceeding by filing a federal lawsuit.  Accordingly, Younger

abstention is typically invoked by the federal court defendant.

Here, the parties' roles are reversed.  B.L., the federal court plaintiff, asks this federal

court to abstain so as to not interfere with state court proceedings.  B.L. provides no support for

the argument that a federal court plaintiff may successfully invoke <u>Younger</u> abstention.[1]  This is

unsurprising given that Plaintiffs are empowered with the ability to select their forum when

filing a complaint.  Filing a complaint signals the plaintiff's desire to have the forum of their

choice exercise jurisdiction over the controversy.[2]  For a plaintiff to later argue—and in this

instance argue after an unfavorable ruling—that the forum it unilaterally selected should abstain

from exercising jurisdiction strongly suggests forum shopping, a highly disfavored practice.[3]

<u>See</u> <u>Eggleton v. Plasser & Theurer Export Van Bahnbaumaschinen Gesellschaft, MBH</u>, 495 F.3d

582, 586–89 (8th Cir. 2007) (adopting rule that avoids forum shopping potential).  A plaintiff

should not be entitled to pursue relief in state and federal court and request dismissal without

prejudice after receiving an unfavorable ruling from one forum.

     Accepting B.L.'s argument—particularly at this late state in the federal

proceeding—would conflict with the interests of comity and federalism that counsel federal

courts to abstain under <u>Younger</u>.  <u>See</u> <u>Haw. Hous. Auth. v. Midkiff</u>, 467 U.S. 229, 238 (1984)

("[C]onsiderations of economy, equity, and federalism counsel against <u>Younger</u> abstention"

when the federal case has moved beyond the "embryonic stage").  With discovery completed and

---

[1] B.L. cites authority discussing and applying <u>Younger</u> in an array of situations, but in each case it is the federal defendant arguing that abstention is appropriate.  The Court was unable to locate a case in which a plaintiff successfully argued that <u>Younger</u> applied.

[2] At the March 28, 2018 hearing, counsel for B.L. acknowledged that filing this lawsuit in federal court was a "mistake."  Be that as it may, counsel failed to remedy this by voluntarily dismissing the complaint pursuant to Federal Rule of Civil Procedure 41 prior to the District filing its Motion for Summary Judgment.

[3] To further illustrate the novelty of B.L.'s argument, in its briefing resisting B.L.'s Motion for a Temporary Restraining Order or for a Preliminary Injunction, the District argued that <u>Younger</u> applied and that the Court should abstain from entertaining the Motion.  B.L. disagreed and urged the Court to rule upon the Motion, which it did.

the District's Motion for Summary Judgment fully briefed and ready for adjudication, this case

has moved well beyond the embryonic stage. Accordingly, the Court will not abstain under

Younger and will proceed to the merits of B.L.'s Amended Complaint.

## C. Merits

### 1. The School Board's Impartiality

B.L. seeks a declaratory judgment that the School Board could not act as the

decisionmaker in his expulsion proceeding because members of the School Board participated in

the decision to pursue expulsion and were therefore biased toward expulsion.  According to B.L.,

involvement by some School Board members in both the decision to pursue expulstion as well as

the actual expulsion proceeding violated his due process rights.  The District responds that B.L.

has not produced any evidence that members of the School Board decided to expel B.L. prior to

the hearing.

The communications between School Board members and the Mahtomedi High School

Vice Principal and the District Superintendent regarding whether to pursue expulsion were

largely procedural.  For example, Vice Principal Luanne Wagner ("Wagner") told B.L. that "you

are going to have a 10-day out-of-school suspension and that during that time we will be talking

with the superintendent and the school board to determine if they want to go toward expulsion."

Hr'g Tr. at 71–72.  Wagner also told B.L. that "during the time of the suspension the school

board and high school administration will talk about whether or not to proceed toward

expulsion."  Id. at 72.  The District's Superintendent, Dr. Mark Larson testified similarly, stating

that he met with the School Board and "[e]xplained what had happened from what our

understanding is and explained the procedure and they understood the procedure and agreed to

proceed.") <u>Id.</u> at 125.

The Court finds that the interests and due process considerations at issue here are similar to those in <u>Hortonville Joint School District Number 1 v. Hortonville Education Association</u>, 426 U.S. 482 (1976). <u>Hortonville</u> addressed whether a school board's members who had been involved in labor negotiations precipitating a teachers' strike could, consistent with due process, terminate those teachers who later engaged in a strike that was prohibited by state law. <u>Id.</u> at 484. After stating that "[m]ere familiarity with the facts of a case gained by an agency in the performance of its statutory role does not . . . disqualify a decisionmaker," the Supreme Court held that the school board's prior involvement was insufficient to overcome the "presumption of honesty and integrity in policymakers with decisionmaking power." <u>Id.</u> at 493, 496–97.

The record here does not demonstrate that the School Board's decision to expel B.L. "was infected by the sort of bias" that disqualifies a decisionmaker as a matter of federal due process. <u>Hortonville</u>, 426 U.S. at 496. The District is entitled to summary judgment that the School Board did not violate B.L.'s due process rights when it voted to expel him for the 2016–17 school year and for the first semester of the 2017–18 school year.

## 2. Alternative Educational Services

B.L. also contends that he was denied alternative educational services before being expelled. B.L. seeks a declaratory judgment that the District violated B.L.'s rights under the United States Constitution, as well as a permanent injunction directing the District to comply with its due process obligations.

This argument was raised in support of B.L.'s Motion for a Temporary Restraining Order or for a Preliminary Injunction. In denying the Motion, the Court concluded that B.L. had not

demonstrated irreparable harm, a precursor to obtaining preliminary injunctive relief.  No additional discovery has been conducted since B.L.'s earlier motion was denied.  Accordingly, for the reasons previously discussed, B.L. has not demonstrated irreparable harm and is therefore not entitled to a permanent injunction.  See United States v. Green Acres Enters., Inc., 86 F.3d 130, 132–33 (8th Cir. 1996) ("In order for a district court to grant a permanent injunction, the plaintiff must show that he will suffer irreparable harm if the injunction is not granted.") (citing Amoco Prod. Co. v. Vill. of Gambell, Alaska, 480 U.S. 531, 546 n.12 (1987).

B.L. is also not entitled to a declaratory judgment.  In denying B.L.'s Motion for a Temporary Restraining Order or for a Preliminary Injunction, the Court stated that "the District presents a strong likelihood that they will succeed on the merits of the case."  B.L., 2017 WL 1497855, at *3.  With the record the same now as it was then, B.L. has not presented a new argument that convinces the Court its earlier assessment was incorrect.  The record reflects that the District complied with the requirements of the PFDA before and after initiating proceedings to expel B.L.

### IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Mahtomedi School District, ISD No. 832's Motion for Summary Judgment [Docket No. 29] is **GRANTED.**  The Second Amended Complaint [Docket No. 6] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


_____ s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  April 26, 2018.